**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PHOENIX BOND & INDEMNITY )
COMPANY, )
  )
       Plaintiff, )
  )    No. 18 C 6897
      v. )
  )    Judge Sara L. Ellis
FDIC as RECEIVER for WASHINGTON )
FEDERAL BANK FOR SAVINGS, )
  )
      Defendant. )

**OPINION AND ORDER**

The Federal Deposit Insurance Company in its capacity as receiver for Washington

Federal Bank for Savings ("FDIC-R") removed a state court action to this Court pursuant to 12

U.S.C. § 1819(b)(2) after the state court ordered the Cook County Clerk to issue a tax deed to

Phoenix Bond & Indemnity Company ("Phoenix Bond"). The FDIC-R contends that Phoenix

Bond violated the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"),

12 U.S.C. § 1825(b), by attempting to take title to property over which the FDIC-R held a

mortgage. The FDIC-R challenges the state court's order because it did not consent to the order

or resulting tax deed. In its counterclaim, the FDIC-R seeks a declaration that the tax deed is

void *ab initio* and of no legal effect. The parties have filed cross-motions for summary

judgment. Phoenix Bond argues that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, bars this

Court's jurisdiction over the FDIC-R's claims. In the alternative, Phoenix Bond moves the Court

to find that the tax deed is voidable, requiring the FDIC-R to pay redemption amounts under

Section 22-80(b) of the Illinois Property Tax Code. *See* 35 Ill. Comp. Stat. 200/22-80(b). The

FDIC-R moves the Court to enter a declaration that the tax deed is void pursuant to Section 22-

80(a), which would instead require the County to refund Phoenix Bond. Because the TIA is a

jurisdictional bar that prevents the Court from hearing the FDIC-R's claims, the Court remands

this case for lack of subject matter jurisdiction and terminates as moot the parties' motions for

summary judgment [32, 35].

## BACKGROUND[1]

On February 26, 2010, Washington Federal Bank for Savings ("Washington Federal")

made a loan to Indomitable LLC and Metropolitan Bank and Trust Company. The loan was

secured by a mortgage on the property known as 2120 N. Lockwood Avenue, Chicago, Illinois

("the Property"). Washington Federal recorded its mortgage on the property on April 23, 2010.

On August 15, 2015, Phoenix Bond purchased the delinquent Cook County real estate taxes on

the Property for $9,223.32. The Office of the Comptroller of Currency closed Washington

Federal on December 15, 2017, and appointed the FDIC as receiver. Upon this appointment, the

FDIC-R became the successor of all rights, titles, powers, and privileges of the assets of

Washington Federal. Accordingly, the FDIC-R holds the mortgage on the Property.

On December 17, 2017, Phoenix Bond filed a petition for a tax deed in the Circuit Court

of Cook County, Illinois. On May 11, 2018, the FDIC-R sent Phoenix Bond a letter informing

Phoenix Bond of the following: (1) the Property was subject to a mortgage held by the FDIC-R;

(2) 12 U.S.C. § 1825(b) prohibited the foreclosure of any involuntary lien or the transfer of title

without the FDIC-R's consent; and (3) Phoenix Bond's continued efforts to take title to the

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Facts and the accompanying exhibits. FDIC-R represents that Phoenix Bond never replied to its proposed joint statement despite multiple communications. In its cross-motion, Phoenix Bond states that "the facts are not in dispute," Doc. 35 at 1, does not introduce any additional facts, and all of the facts are derived from its answer, *see* Doc. 30. Therefore, the Court deems all facts admitted. Additionally, because neither side has objected to the consideration of any facts on hearsay or other grounds at the summary judgment stage, the Court considers them admissible for purposes of resolving this motion. The Court takes all facts in the light most favorable to the non-movant, and for the cross-motions here, the Court views the evidence in the light most favorable to the party against whom each motion is under consideration.

Property would violate FIRREA.  Phoenix Bond subsequently applied for issuance of a tax deed

in the state court proceeding, and the state court entered an order directing the Cook County

Clerk to issue a tax deed on August 14, 2018.  The FDIC-R did not consent to the issuance of a

tax deed or entry of an order.  The FDIC-R subsequently intervened and removed the action on

October 12, 2018.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and

assess the proof as presented in depositions, answers to interrogatories, admissions, and

affidavits that are part of the record.  Fed. R. Civ. P. 56 & advisory committee's notes.  The party

seeking summary judgment bears the initial burden of proving that no genuine issue of material

fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the non-moving

party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to

identify specific material facts that demonstrate a genuine issue for trial.  *Id.* at 324; *Insolia v.*

*Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).  Although a bare contention that an issue

of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th

Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party

and draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986).  The same standard applies when considering cross-motions for summary

judgment.  *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402,

404 (7th Cir. 2002).  Therefore, when considering Phoenix Bond's motion for summary

judgment, the Court views all evidence in the light most favorable to the FDIC-R, and when

considering the FDIC-R's motion for summary judgment, the Court views all evidence in the light most favorable to Phoenix Bond.  *Id.*

<h1 style="text-align:center">ANALYSIS</h1>

"Federal courts are courts of limited jurisdiction," *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 845 (7th Cir. 2015), and a litigant may raise lack of subject matter jurisdiction at any time, *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).[2]  The TIA imposes one such limitation.  The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The TIA deprives federal courts of subject matter jurisdiction in "cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes."  *Hibbs v. Winn*, 542 U.S. 88, 107 (2004).  In other words, "if the relief sought would diminish or encumber state tax revenue, then the Act bars federal jurisdiction over claims seeking such relief."  *Scott Air Force Base Props., LLC v. Cty. of St. Clair*, 548 F.3d 516, 520 (7th Cir. 2008).  Under the TIA, district courts do not have jurisdiction to hear suits seeking injunctive or declaratory relief from state, municipal, or local taxes.  *See id.* (citing *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982)).  "Congress' intent in enacting the Tax Injunction Act was to prevent federal-court interference

---

[2] Here, Phoenix Bond raised this argument for the first time in its reply brief, so the FDIC-R has not had an opportunity to respond.  However, "[s]ubject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself."  *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008); *see also Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("[N]ot only may the federal courts police subject matter jurisdiction *sua sponte*, they must.").  Indeed, Federal Rule of Civil Procedure 12 instructs: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Because the Court concludes that the Tax Injunction Act bars jurisdiction in this matter, and the jurisdictional defect is incurable, a response from the FDIC-R is unnecessary.  *See George v. Islamic Republic of Iran*, 63 F.App'x 917, 918 (7th Cir. 2003) (affirming *sua sponte* dismissal for want of subject matter jurisdiction because standing is an incurable jurisdictional defect).

4

with the assessment and collection of state taxes." *Grace Brethren Church*, 457 U.S. at 411; *see also A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 893 (7th Cir. 2020) ("We construe the Tax Injunction Act's limitations restrictively because the Act is meant to dramatically curtail federal-court review of state and local taxation.").

To determine whether the TIA applies, the Court first examines the relief that the FDIC-R seeks. In its counterclaim, the "FDIC-R seeks a declaration that the tax deed [issued to Phoenix Bond] is void *ab initio*." Doc. 26 ¶ 24. Under Illinois law, "[a]ny order of court vacating an order directing the county clerk to issue a tax deed based upon a finding that . . . the tax sale was otherwise void, shall declare the tax sale to be a sale in error pursuant to Section 21-310 of this Act." 35 Ill. Comp. Stat. 200/22-80(a). And, as a result, the county collector must refund certain amounts to the tax deed grantee, including taxes and special assessments paid. *See id.* In other words, if the Court issues a declaration stating that the tax deed is void, the sale was in error and Cook County must refund the amount Phoenix Bond paid at the tax sale, as well as any subsequent taxes and interest. Thus, if this Court were to grant the relief that the FDIC-R seeks, the indirect result would be a tax refund from the County, which the TIA prohibits. *Compare Wright v. Pappas*, 256 F.3d 635, 637–38 (7th Cir. 2001) (TIA barred suit where tax purchaser sought to undo tax sale because he was "seeking in effect a tax refund"), *with Johnson v. Orr*, 551 F.3d 564, 571–72 (7th Cir. 2008) (TIA did not bar the plaintiff's claims where he sought a tax deed, as it would not "reduce the flow of tax revenue to Illinois"). The Court's relief would impermissibly reduce the flow of tax revenue. *See Hibbs*, 542 U.S. at 106. The FDIC-R acknowledges as much, stating that "Phoenix Bond is entitled to a refund of the amount it paid at the tax sale, plus all subsequent taxes paid, interest, and other costs from the county collector." Doc. 32 at 2. Therefore, the TIA prevents the Court from ordering the relief sought.

The Seventh Circuit's decision in *RTC* is instructive here. *See RTC Commercial Assets Tr. 1995-NP3-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448 (7th Cir. 1999). There, Phoenix Bond purchased tax certificates for property in which RTC Trust[3] held interests. *Id.* at 451. Phoenix Bond petitioned for a tax deed for the property represented by its tax certificates. *Id.* RTC responded by initiating an action against Phoenix Bond in federal court seeking, in part, a declaratory judgment under FIRREA that the tax liens were invalid and Phoenix Bond did not have a valid interest in the property. *Id.* The court concluded that the TIA barred federal jurisdiction and noted that "the contingent nature of the tax certificates [was] crucial." *Id.* at 455. The court explained that "Illinois offers certificate purchasers a guarantee against legal flaws in the tax sale, by making available to the purchaser an action in state court for a declaration of a sale in error and by obligating the County Clerk to refund the amount paid for the certificate upon such a declaration." *Id.*

Here, if the Court were to declare the tax deed void, it would lead to the same impermissible result. There would be a sale in error, and the County Clerk would be obligated to refund Phoenix Bond certain monies. There is perhaps even a stronger argument here that the TIA bars jurisdiction because the refund would be automatic, under 35 Ill. Comp. Stat. 200/22-80(a), compared to *RTC* where the court anticipated that Phoenix Bond would have had to sue for a declaration of a sale in error to receive a refund pursuant to section 21–310(b). *See RTC*, 169 F.3d at 455 ("We concede that there is a slightly hypothetical tinge to the question whether Phoenix would avail itself of the right to sue for a declaration of a sale in error if this court were to decide that RTC's interests in the property (now in the hands of RTC Trust) could not be extinguished by the tax deed, at least without RTC's consent, see 18 U.S.C. § 1825(b)(2)."); *In*

---

[3] RTC was the federally appointed receiver pursuant to FIRREA, and it assigned its interests to RTC Trust, a private party. *RTC*, 169 F.3d at 451, 452.

6

*re Application of Douglas Cty. Treasurer*, 2014 IL App (4th) 130261, ¶ 49 ("Section 22–80 of the Property Tax Code requires orders vacating tax deeds to declare the tax sale to be a sale in error pursuant to section 21–310 of the Property Tax Code [ ] and direct the county collector to issue a refund to the tax purchaser.").

Moreover, *RTC* confirms that FIRREA does not implicitly repeal the TIA for purposes of suits brought to enforce rights under § 1825(b). *See RTC*, 169 F.3d at 454. The receivers here and in *RTC* argued that FIRREA prohibits the tax purchaser from taking title to property. *See id.* at 451; Doc. 32 at 1. But, as the Seventh Circuit explained, "[s]tate courts have concurrent jurisdiction over FIRREA claims" and "routinely decide such cases." *RTC*, 169 F.3d at 454. Further, "there is no indication in FIRREA that Congress intended impliedly to repeal the TIA," *id.*, and there is a lack of statutory support in FIRREA for "a powerful version of exclusive federal power," *id.* at 456. Moreover, FIRREA's inclusion of a removal provision, invoked here, does not defeat the TIA's jurisdictional bar. *See Bank of New England Old Colony, N.A. v. Clark*, 986 F.2d 600, 604 (1st Cir. 1993) ("The mere fact that § 1819(b)(2)(B) states that the FDIC may remove 'all' actions does not in itself demonstrate the clear and manifest intent of Congress to trump the [TIA]."); *Simon v. Cebrick*, 53 F.3d 17, 22 (3d Cir. 1995) (rejecting the FDIC's argument that FIRREA's removal provision shows that Congress intended to create an exception to the TIA). It is not apparent that Congress intended to implicitly repeal the TIA through FIRREA's removal provision, and *RTC*'s conclusion that FIRREA's jurisdictional provision did not impliedly repeal the TIA supports this conclusion. *See RTC*, 169 F.3d at 454; *see also Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 472 (1976) (jurisdictional statute is insufficient by itself to impliedly repeal the TIA); *cf. Hui v. Castaneda*, 559 U.S. 799, 810 (2010) ("[R]epeals by implication are not favored and will not be

7

presumed unless the intention of the legislature to repeal is clear and manifest." (citation

omitted)).  Therefore, the FDIC-R may present its FIRREA-based argument to the state court,

which will undoubtedly provide a "plain, speedy and efficient remedy."  *RTC*, 169 F.3d at 454 (it

would be "impossible" to make a showing that Illinois state courts could not provide a plain,

speedy, and efficient remedy to FIRREA claims); *see also A.F. Moore & Assocs.*, 948 F.3d at

893 ("For the Act's jurisdictional bar to apply, a state need only 'provid[e] the taxpayer with a

"full hearing and judicial determination" at which she may raise any and all constitutional

objections to the tax . . . . The Act contemplates nothing more.'" (quoting *Rosewell v. LaSalle*

*Nat'l Bank*, 450 U.S. 503, 515–16 n.19 (1981))).

Moreover, the judicially created federal instrumentality exception to the TIA does not

apply.  The TIA "does not bar federal jurisdiction when the United States sues to protect itself or

one of its instrumentalities from an unlawful state tax."  *Scott Air Force Base Props.*, 548 F.3d at

520 n.4 (citing *Dep't of Emp't v. United States*, 385 U.S. 355, 358 (1966)); *Arkansas v. Farm*

*Credit Servs. of Cent. Ark.*, 520 U.S. 821, 827 (1997) ("[The] Tax Injunction Act is not a

constraint on federal judicial power when the United States sues to protect itself and its

instrumentalities from state taxation.").  "But the FDIC is not the United States," *O'Melveny &*

*Myers v. FDIC*, 512 U.S. 79, 85 (1994), and courts differ as to whether the FDIC qualifies for

this exception.  *Compare Clark*, 986 F.2d at 602 (FDIC not federal instrumentality), *and FDIC v.*

*New York*, 928 F.2d 56, 59 (2d Cir. 1991) (recognizing an exemption to the TIA for FDIC would

not serve the TIA's objectives), *with Simon*, 53 F.3d at 22 (FDIC is federal instrumentality), *and*

*FDIC v. City of New Iberia*, 921 F.2d 610, 613 (5th Cir. 1991) (same); *see also Pima Fin. Serv.*

*Corp. v. Intermountain Home Sys., Inc.*, 786 F. Supp. 1551 (D.Colo. 1992) (collecting FDIC

federal instrumentality cases and concluding FDIC is not federal instrumentality).  The Seventh

Circuit has not addressed whether the FDIC is a federal instrumentality for purposes of this

exception.

The relevant statute, 12 U.S.C. § 1819, fails to indicate that Congress intended the FDIC

to qualify as a federal instrumentality. *See Clark*, 986 F.2d at 603. The provision makes the

FDIC an agency only for purposes of 28 U.S.C. § 1345, a jurisdictional statue subject to

exceptions made by Congress. *See* 12 U.S.C. § 1819; *see also Clark*, 986 F.2d at 603, 604

(citing *Fed. Sav. & Loan Ins. Corp. v. Ticktin*, 490 U.S. 82, 85–87 (1989), and explaining that

§ 1345's grant of agency jurisdiction is different and subject to the provisions of other law).

Comparatively, Congress granted the FDIC's predecessor, the Federal Savings and Loan

Insurance Corporation ("FSLIC"), agency status for all purposes. *See* 12 U.S.C. § 1730(k)(1)

(repealed in 1989). The legislation granting FSLIC federal agency status was broader than the

relative statute for the FDIC. *Fed. Dep. Ins. Corp. v. State of N.Y.*, 732 F. Supp. 26, 28, 29

(S.D.N.Y. 1990), *aff'd* 928 F.2d 56 (2d Cir. 1991) (Congress only made the FDIC an agency for

purposes of a jurisdictional statute, but the FSLIC was an agency within the general definition of

"agency"). Because Congress did not render the FDIC an agency for all purposes, despite doing

so for the FSLIC, the Court will not assume that Congress intended broad federal instrumentality

status. *See Pima Fin. Serv.*, 786 F. Supp. at 1560 ("Congress, in amending the FDIC's powers

under the Federal Deposit Insurance Act, chose not to give the FDIC full-fledged agency status,

as it had earlier done with the FSLIC, to accomplish its mission."). Therefore, the Court

concludes the FDIC is not a federal instrumentality, thus, this exception to the TIA is

inapplicable. *See Clark*, 986 F.2d at 603, 604 (finding that the FDIC was not a federal

instrumentality, so the TIA applied and the action belonged in state court); *Pima Fin. Serv.*, 786

F. Supp. at 1561 (finding the action barred because the FDIC was not a federal instrumentality

9

for purposes of the TIA or Eleventh Amendment); *State of N.Y.*, 928 F.2d at 59 (finding the

FDIC could not invoke the federal instrumentality exception). The TIA divests this Court of

jurisdiction over this action.

## CONCLUSION

For the foregoing reasons, the Court remands this case for want of jurisdiction based on

the Tax Injunction Act. The Court terminates as moot the parties' cross-motions for summary

judgment [32, 35].


Dated: July 20, 2020                          _____

                                              SARA L. ELLIS
                                              United States District Judge

10