UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHOENIX BOND & INDEMNITY COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) No. 18 C 6897 |
| v. | ) ) Judge Sara L. Ellis |
| FDIC as RECEIVER for WASHINGTON FEDERAL BANK FOR SAVINGS, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

After the state court ordered the Cook County Clerk to issue a tax deed to Phoenix Bond & Indemnity Company ("Phoenix Bond"), the Federal Deposit Insurance Company in its capacity as receiver for Washington Federal Bank for Savings ("FDIC-R") removed that action to this Court pursuant to 12 U.S.C. § 1819(b)(2). The FDIC-R contends that Phoenix Bond violated the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1825(b), by attempting to take title to property over which the FDIC-R held a mortgage. After finding that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, barred jurisdiction over the FDIC-R's claims, this Court remanded the case for lack of subject matter jurisdiction. The FDIC-R subsequently filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), arguing that the Court erred in concluding that the FDIC-R did not qualify for the federal instrumentality exception to the TIA. The FDIC-R also asks the Court to issue a stay pending appeal, in the event the Court denies the motion for reconsideration. Because the Court's judgment was not based on a manifest error of law, the Court denies the FDIC-R's motion for

reconsideration [58]. Nonetheless, the Court grants the FDIC-R's request for a stay pending appeal because the balance of harms weighs heavily in favor of the FDIC-R.

## BACKGROUND[1]

On February 26, 2010, Washington Federal Bank for Savings ("Washington Federal") made a loan to Indomitable LLC and Metropolitan Bank and Trust Company. The loan was secured by a mortgage on the property known as 2120 N. Lockwood Avenue, Chicago, Illinois ("the Property"). Washington Federal recorded its mortgage on the property on April 23, 2010. On August 15, 2015, Phoenix Bond purchased the delinquent Cook County real estate taxes on the Property for $9,223.32. The Office of the Comptroller of Currency closed Washington Federal on December 15, 2017 and appointed the FDIC as receiver. Upon this appointment, the FDIC-R became the successor of all rights, titles, powers, and privileges of the assets of Washington Federal. Accordingly, the FDIC-R holds a mortgage on the Property.

On December 17, 2017, Phoenix Bond filed a petition for a tax deed in the Circuit Court of Cook County, Illinois. On May 11, 2018, the FDIC-R sent Phoenix Bond a letter informing Phoenix Bond of the following: (1) the Property was subject to a mortgage held by the FDIC-R; (2) 12 U.S.C. § 1825(b) prohibited the foreclosure of any involuntary lien or the transfer of title without the FDIC-R's consent; and (3) Phoenix Bond's continued efforts to take title to the Property would violate FIRREA. Phoenix Bond subsequently applied for issuance of a tax deed in the state court proceeding, and the state court entered an order directing the Cook County Clerk to issue a tax deed on August 14, 2018. The FDIC-R did not consent to the issuance of a tax deed or entry of an order. The FDIC-R subsequently intervened and removed the action on October 12, 2018.

---

[1] While the Court presumes the parties' familiarity with the facts, as previously detailed in the July 20, 2020 Opinion, Doc. 53, the Court briefly recounts the facts here.

The parties later filed cross-motions for summary judgment. On July 20, 2020, the Court concluded that the TIA barred subject matter jurisdiction over the FDIC-R's claims and remanded the case. On August 14, 2020, the FDIC-R filed a motion for reconsideration, arguing that the Court erred in concluding that the TIA barred jurisdiction.

## LEGAL STANDARD

Motions for reconsideration serve a limited purpose and are "only appropriate where the court has misunderstood a party, where a court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)), *overruled on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). A motion for reconsideration "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006) (citation omitted); *see also Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (a Rule 59(e) motion does not "enable a party to complete presenting his case after the court has ruled against him" (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995))).

## ANALYSIS

### I. Reconsideration of the Remand Order

"Federal courts are courts of limited jurisdiction," and the TIA imposes one such limitation. *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 845 (7th Cir. 2015). The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in

3

the courts of such State." 28 U.S.C. § 1341. "Congress' intent in enacting the Tax Injunction Act was to prevent federal-court interference with the assessment and collection of state taxes." *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982); *see also Hibbs v. Winn*, 542 U.S. 88, 107 (2004). The Seventh Circuit has instructed courts to "construe the Tax Injunction Act's limitations restrictively because the Act is meant to dramatically curtail federal-court review of state and local taxation." *A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 893 (7th Cir. 2020). The FDIC-R does not contest the applicability of the TIA but instead argues that the federal instrumentality exception applies. *See* Doc. 53 at 5–8. The Court therefore restricts its analysis to reconsidering whether the FDIC-R qualifies as a federal instrumentality.

The TIA "does not bar federal jurisdiction when the United States sues to protect itself or one of its instrumentalities from an unlawful state tax." *Scott Air Force Base Props., LLC v. Cty. of St. Clair*, 548 F.3d 516, 520 n.4 (7th Cir. 2008) (citing *Dep't of Emp't v. United States*, 385 U.S. 355, 358 (1966)); *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 827 (1997) ("[T]he Tax Injunction Act is not a constraint on federal judicial power when the United States sues to protect itself and its instrumentalities from state taxation."). In *Farm Credit Services*, the Supreme Court explained that circuit courts had different tests for evaluating the applicability of the federal instrumentality exception. *See* 520 U.S. at 830 (explaining that the Ninth Circuit required joinder with the United States as a co-plaintiff for the federal instrumentality exception to apply, whereas the First Circuit examined the instrumentality in light of its governmental role and expressed Congressional intent). There, the Court determined that Production Credit Associations ("PCAs"), corporations chartered under federal law, were not federal instrumentalities under either approach, explaining that PCAs "serve specific commercial and economic purposes long associated with various corporations chartered by the United States" and

do not have governmental regulatory authority. *Id.* at 831. The Court noted that although Congress statutorily designated PCAs as an instrumentality, such designation did not require an "inference that the instrumentality has all of the rights and privileges of the National Government." *Id.* at 829.

The Seventh Circuit has not provided a test for determining whether the federal instrumentality exception applies. *See Scott Air Force Base Props.*, 548 F.3d at 520 n.4 ("It is apparently still an open question whether an instrumentality of the United States with power analogous to that of a government department or regulatory agency may sue in its own right and evade the [TIA's] jurisdictional bar without the joinder of the United States in the action.")[2]; *Miller v. Bauer*, 517 F.2d 27, 30 (7th Cir. 1975) ("[T]here is no simple test for ascertaining whether an institution is so closely related to governmental activity as to become a tax-immune instrumentality."); *see also RTC Com. Assets Tr. 1995-NP3-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 453 (7th Cir. 1999) (RTC Trust is too remote from the United States to qualify for the federal instrumentality exception). In *DeKalb County*, the Seventh Circuit concluded that the TIA did not bar the Federal Housing Financial Agency's ("FHFA") action against the Director of the Illinois Department of Revenue. 741 F.3d at 803–04. The court stated that "[a] suit by a federal agency to enforce federal interests is a suit by the United States." *Id.* at 804. The court rejected the Director's suggestion that it consider that Fannie Mae or Freddie Mac's[3] assets and income would pay any tax. *Id.* The court explained that "as long as their conservator is the United States, and the assets and income in question are those of entities

---

[2] The Seventh Circuit did not revisit this statement in *DeKalb County v. FHFA*, 741 F.3d 795 (7th Cir. 2013), however, the court's determination that the FHFA was a federal instrumentality suggests that joinder of the United States is not necessary.

[3] The entities are formally known as the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). *Id.* at 797.

charged with a federal duty (that of promoting the federal policy of encouraging home ownership), the conservator's suit against a state's tax collector is a suit by the United States, and so the Tax Injunction Act falls away." *Id.*

The FDIC-R contends that because the FHFA as conservator qualified for the exception in *DeKalb County*, the FDIC as receiver should also qualify. However, there are important differences between those two entities. When the FDIC acts in its capacity as receiver, it "steps into the shoes" of the failed entity. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) (citation omitted); *see also* 12 U.S.C. § 1821(d)(2)(A) (as receiver, the FDIC "succeed[s] to—all rights, titles, powers, and privileges of the insured depository institution"); *Veluchamy v. FDIC*, 706 F.3d 810, 812 (7th Cir. 2013) ("[W]hen an insured bank fails, the FDIC acts in a receiver capacity, stepping into the shoes of the failed bank much like a trustee in bankruptcy."). The FDIC's obligations therefore flow to the creditors of the institution. *Veluchamy*, 706 F.3d at 812 ("As receiver, the FDIC attempts to preserve or enhance the value of the bank's assets and to dispose of them as quickly as possible, protecting depositors and maintaining confidence in the banking system."); *see id.* at 818 (one of the FDIC-R's powers is to take amounts from liquidation and distribute them to those with claims against the failed bank (citing 12 U.S.C. § 1821(d)(11))); *Golden Pac. Bancorp. v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004) ("It is undisputed that, as a receiver, the FDIC owes a fiduciary duty to the Bank's creditors."). Comparatively, a conservator's goal is to preserve assets and return an entity to solvency. *See* FDIC, Resolutions Handbook (2019), *available at* https://www.fdic.gov/bank/historical/reshandbook/resolutions-handbook.pdf#page=29 ("A receivership is designed to market the assets of a failed institution, liquidate them, and distribute the proceeds to the institution's creditors," whereas "[a] conservatorship is designed to operate the institution for a period of time

in order to return the institution to a sound and solvent operation."); *cf. Roberts v. FHFA*, 889 F.3d 397, 403 (7th Cir. 2018) ("A conservatorship that required liquidation would be, in effect, a receivership."). A conservator therefore owes duties to the entity, rather than assuming the role of the entity. *See Sisti v. FHFA*, 324 F. Supp. 3d 273, 283 (D.R.I. 2018) (a receiver assumes the fiduciary duties of the entity but a conservator remains distinct and owes duties to the entity); *cf. Rop v. FHFA*, No. 1:17-CV-497, 2020 WL 5361991, at *16 (W.D. Mich. Sept. 8, 2020) ("Under FIRREA, the FDIC succeeds to the rights of shareholders of banks that are in receivership."). Therefore, *DeKalb* does not alter the Court's conclusion because unlike the FHFA as conservator, which owed duties to entities charged with federal duties, here, the FDIC-R assumed the role of a private entity with obligations to that entity.

*O'Melveny* reaffirms that conclusion. *O'Melveny* explained that "§ 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent [bank], to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." 512 U.S. at 87. This indicates that the FDIC-R does not act as a federal instrumentality but instead acts as a private entity. *See FDIC v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004) ("FDIC–Receiver steps into the shoes of the failed bank and is bound by the rules that the bank itself would encounter in litigation."); *see also Bank of New England Old Colony, N.A. v. Clark*, 986 F.2d 600, 603 (1st Cir. 1993) (FDIC-R not federal instrumentality in part because "if successful, the benefits from the refund claim will flow principally to the bank's creditors and depositors, not to the federal treasury"); *FDIC v. Bd. of Supervisors*, No. 1:11-CV-1394 AJT/TRJ, 2012 WL 3017862, at *3 (E.D. Va. July 23, 2012) (FDIC was a federal instrumentality in part because "it [was] not suing in its capacity as a receiver or effectively standing in the shoes of a failed bank"). Moreover, as this Court previously explained, Congress only designated the

7

FDIC as an agency for purposes of 28 U.S.C. § 1345, a jurisdictional statue subject to exceptions made by Congress. *See* Doc. 53 at 9 (citing 12 U.S.C. § 1819). On the other hand, the FHFA is an "independent agency of the Federal Government" without limitation. 12 U.S.C. § 4511.

      The Court is not persuaded by the FDIC-R's argument that it is a federal instrumentality because the Seventh Circuit has concluded that the FDIC is a federal agency for purposes of other statutes. For instance, the FDIC-R cites a case in which the Seventh Circuit stated that the FDIC was a federal agency under the Federal Tort Claims Act ("FTCA"). *See FDIC v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364, 369 n.5 (7th Cir. 1979). The FTCA is the exclusive remedy only when a federal agency is involved. *See FDIC v. Hartford Ins. Co. of Ill.*, 877 F.2d 590, 591 (7th Cir. 1989) (citing 28 U.S.C. § 2679(a)). Through the FTCA, Congress waived sovereign immunity for certain torts of federal agency employees, and the FTCA defines "federal agency." *See Mendrala v. Crown Mortg. Co.*, 955 F.2d 1132, 1134 (7th Cir. 1992) (discussing the FTCA and defining federal agency under the Act). Comparatively, Congress did not legislate the federal instrumentality exception to the TIA, it was judicially created. The statutory waiver of immunity discussed in *Citizens Bank* was a clear indication of Congressional intent. In comparison, the TIA is a broad limitation on jurisdiction and the federal instrumentality exception is narrow. *Pappas*, 948 F.3d at 893 (courts must "construe the Tax Injunction Act's limitations restrictively because the Act is meant to dramatically curtail federal-court review of state and local taxation"); *cf. RTC*, 169 F.3d at 454 ("[T]here is no indication in FIRREA that Congress intended impliedly to repeal the TIA. Indeed, the indications point more strongly toward acknowledgment of concurrent state power for FIRREA purposes."). In other words, through the TIA, Congress exacted a clear jurisdictional bar, and the determination of whether the FDIC-R qualifies for a judicially-created exception to such bar differs from the

examination of whether it is a federal agency under a statutory waiver. *Cf. U.S. ex rel. Todd v. Fid. Nat'l Fin., Inc.*, No. 1:12-CV-666-REB-CBS, 2014 WL 4636394, at *8 (D. Colo. Sept. 16, 2014) (determining whether entity qualified as federal instrumentality pursuant to "express statutory language" not instructive for evaluating status for purposes of False Claims Act); *Gladys McCoy Apartments, Ltd. P'ship v. State Farm Fire & Cas. Co.*, No. CV 09-981-PK, 2010 WL 1838941, at *3 (D. Or. Mar. 30, 2010) (cases analyzing whether entity was federal agency for purposes of FTCA were unpersuasive in evaluating whether the court should apply 28 U.S.C. § 1322(c) to determine state of citizenship); *FDIC v. State of N.Y.*, 718 F. Supp. 191, 195 (S.D.N.Y. 1989) (evaluating whether FDIC was federal instrumentality under TIA and whether the Eleventh Amendment barred the FDIC's claims under different standards), *aff'd*, 928 F.2d 56 (2d Cir. 1991).

  Moreover, the FDIC-R's suggestion that the powers Congress provided the FDIC are more important than the specific, restrictive agency designation is unpersuasive. The FDIC-R argues that it has characteristics of a federal agency through the authority it may exercise and its appointment scheme. While this may be true, the Court must also look to the authority that the FDIC exercised in this case. *See Bd. of Supervisors*, 2012 WL 3017862, at *3 (summarizing cases where courts evaluated whether the FDIC was a federal instrumentality in its receivership capacity and noting their focus on the private nature of the FDIC-R). Here, the FDIC is acting in its capacity as receiver. As discussed, in this role, it has effectively stepped into the shoes of the failed bank and is therefore more comparable to a private, rather than governmental, entity. *Cf. Atherton v. FDIC*, 519 U.S. 213, 225 (1997) ("[A]s in *O'Melveny*, the FDIC is acting only as a receiver of a failed institution; it is not pursuing the interest of the Federal Government as a bank insurer."); *Ernst & Young*, 374 F.3d at 581 (FDIC has different capacities, FDIC-R "steps into

9

the shoes of the failed bank" while "FDIC-Corporate acts as guardian of the public fisc");

*Hartford Ins. Co.*, 877 F.2d at 592 ("A tort claim against the FDIC is not one that involves 'only' creditors' or stockholders' rights."); *FDIC v. Beere*, No. 14-C-0575, 2015 WL 5667119, at *4 (E.D. Wis. Sept. 25, 2015) ("The FDIC–R, as receiver, does assert rights 'on behalf of' the Bank, notwithstanding the derivative interests of creditors or depositors whom the Bank did not pay and who may end up with payments from the FDIC–R."). Therefore, the Court maintains that the FDIC-R does not qualify for the federal instrumentality exception to the TIA.

## II. Stay Pending Appeal

The FDIC-R next asks the Court to grant a stay pending appeal if it denies the motion for reconsideration. To determine whether to grant a stay pending appeal, the Court considers (1) the FDIC-R's likelihood of success on the merits, (2) the irreparable harm that each party will suffer, and (3) whether the public interest favors one side. *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). The Court applies a "sliding scale" approach: "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *Id.* (citation omitted).

The FDIC-R argues that it has a likelihood of success on the merits because this case involves an issue of first impression and other courts have divided on the issue. The Court discussed those differing conclusions in this opinion, as well as its initial opinion, and need not repeat them here. The Court agrees that this issue raises a difficult question, and although the Court has attempted to resolve the issue in light of precedent, there is not a clear answer. Accordingly, the Court proceeds to evaluate the irreparable harm that the parties will suffer. *See id.* at 768 ("Because the legal issue does not have a clear-cut answer, we rest our decision on whether to grant the stay primarily on the balance of potential harms."); *cf. Druco Rests., Inc. v.*

*Steak N Shake Enters., Inc.*, No. 1:13-CV-00560-LJM, 2014 WL 268113, at *2 (S.D. Ind. Jan. 23, 2014) (granting stay pending appeal in part because it involved issue of first impression).

When evaluating irreparable harm, the Court assesses the harm "that will result to each side if the stay is either granted or denied in error." *In re A & F Enters., Inc. II*, 742 F.3d at 766. The FDIC-R provides a number of harms it will suffer if the Court does not impose a stay. Phoenix Bond neither indicates that it will suffer harm if the Court grants a stay nor responds to the FDIC-R's request for a stay generally. The state court has entered an order directing the Cook County Clerk to issue a tax deed to Phoenix Bond. And the FDIC-R indicates that when Phoenix Bond obtains title to the property, it could sell the property and extinguish the FDIC-R's interest. Phoenix Bond does not contradict that representation, so the Court accepts the FDIC-R's argument as true. The Court agrees that the FDIC-R will suffer irreparable harm if it loses its property interest. *See id.* at 768 (if the court denied the stay, the party may sell property before appeal was complete, causing irreparable harm to the other party if sale of its businesses could not be undone); *Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr. 2006-18 v. Cornish*, 759 F. App'x 503, 508 (7th Cir. 2019) ("[S]tays pending appeals in foreclosure cases should be routine to prevent the irreparable harm of losing one's home."); *Centerpoint Energy-Ill. Gas Transmission Co. v. Varble*, No. 07-CV-439WDS, 2007 WL 1799642, at *2 (S.D. Ill. June 20, 2007) (defendant's interference with plaintiff's property interests constituted irreparable harm); *see also HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 780 (7th Cir. 2015) (Federal Rule of Civil Procedure 62 gives federal courts the authority to stay the effect of a judgment pending appeal even where immediate review of an order is improper). And although, as this Court previously explained, *see* Doc. 53 at 7–8, the state court is competent to evaluate the FDIC-R's rights under FIRREA, the Court acknowledges there could be some harm to the FDIC-

11

R proceeding there if the Court erred in concluding that it lacked subject matter jurisdiction. *See In re A & F Enters., Inc. II*, 742 F.3d at 766 (the purpose of a stay is to "minimize the costs of error"). The FDIC-R's statutory right to appeal a district court's remand order further indicates that a stay is appropriate. *See* 12 U.S.C. § 1819(b)(2)(C). The harm that Phoenix Bond could suffer may be delay in issuance of the tax deed; however, Phoenix Bond purchased unpaid taxes on the Property over five years ago, and further delay will therefore not cause irreparable harm. Accordingly, the balance of harms weighs in favor of the FDIC-R for issuance of a stay.

Finally, the FDIC-R argues that the public interest favors a stay because it is a federal agency and therefore the public will also suffer any harm it sustains. For the reasons previously discussed, the Court disagrees with this generalized characterization. And the FDIC-R's suggestion that "Phoenix's attempt to enlist the courts of Illinois in the evasion of [the statutory] scheme is contrary to the public interest" explicitly contradicts the Seventh Circuit's determination that state courts are competent to evaluate FIRREA claims. *See RTC*, 169 F.3d at 454 ("State courts have concurrent jurisdiction over FIRREA claims" and "routinely decide such cases."). The Court concludes that the public interest favors neither party here. Nonetheless, under the sliding scale approach, the balance of harms weighs in favor of the FDIC-R and the Court grants a stay pending appeal.

## CONCLUSION

For the foregoing reasons, the Court denies the FDIC-R's motion for reconsideration [58]. However, the Court stays the matter pending appeal.

Dated: December 8, 2020

_____
SARA L. ELLIS
United States District Judge